**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-6228**

───────────

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

DARNELL BLACK, a/k/a Chuck,

              Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:05-cr-00313-BO-1)

───────────

Argued: October 30, 2013        Decided: December 6, 2013

───────────

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

───────────

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge King and Judge Duncan joined. Judge King wrote a separate concurring opinion.

───────────

**ARGUED:** G. Alan DuBois, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Yvonne Victoria Watford-McKinney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

Darnell Black was sentenced in January 2007 to the statutory minimum of 120 months' imprisonment for conspiracy to traffic in more than 50 grams of crack cocaine. See 21 U.S.C. § 841(b)(1). The Fair Sentencing Act, which was enacted in 2010, more than three years after Black was sentenced, reduced the statutory minimum sentence applicable to his circumstances from 120 months' imprisonment to 60 months' imprisonment. Black filed a motion under 18 U.S.C. § 3582(c)(2) to modify his sentence, contending that the reduced minimum sentences in the Fair Sentencing Act should apply to him. The district court denied his motion, relying on our decision in United States v. Bullard, 645 F.3d 237 (4th Cir. 2011), in which we held that the Fair Sentencing Act does not apply retroactively.

For the reasons given herein, we affirm. We conclude that the statutory minimum sentences in the Fair Sentencing Act do not apply to a defendant sentenced before the Act's effective date. Moreover, we reject Black's argument that a § 3582(c)(2) proceeding conducted after the effective date of the Fair Sentencing Act provides a vehicle by which to apply the reduced minimum sentences in the Fair Sentencing Act to him.

I

Black pleaded guilty on September 14, 2006, to conspiracy to distribute and possess with intent to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1). In the presentence report prepared for Black's sentencing, the probation officer recommended that Black be held accountable for 84.2 grams of crack cocaine and 26.8 grams of powder cocaine, yielding, after other adjustments not relevant here, a Sentencing Guidelines range of 97 to 121 months' imprisonment. Because the underlying drug trafficking offense involved more than 50 grams of crack cocaine, however, Black was subject to a statutory minimum sentence of 120 months' imprisonment, id. § 841(b)(1)(A) (2006), and therefore his sentencing range became 120 to 121 months' imprisonment. On January 23, 2007, the district court sentenced Black to 120 months' imprisonment, the statutory minimum.

More than three years later, Congress enacted the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, in response to extensive criticism about the disparity in sentences between crack cocaine offenses and powder cocaine offenses. See Dorsey v. United States, 132 S. Ct. 2321, 2328-29 (2012). Among other things, the FSA reduced the statutory minimum sentences for crack cocaine offenses by increasing the quantity of crack cocaine necessary to trigger the minimums --

3

raising the amount from 15 grams to 28 grams for the 5-year minimum sentence, and from 50 grams to 280 grams for the 10-year minimum sentence. See FSA § (2)(a). The Act left the statutory minimum sentences for powder cocaine in place. The effect of the changes was to reduce the sentencing disparity between crack cocaine offenses and powder cocaine offenses by lowering the crack-to-powder ratio from 100-to-1 to 18-to-1. The FSA also directed the Sentencing Commission to conform the Sentencing Guidelines to the new statutory minimums "as soon practicable." Id. § 8. The Sentencing Commission thereafter promulgated amendments to the Guidelines, reducing the recommended sentencing ranges to levels consistent with the FSA, to be applied retroactively. See U.S.S.G. App. C Amends. 750, 759 (2011). Comments to the Guidelines, however, explain that retroactive amendments do not alter statutory minimum terms of imprisonment. See U.S.S.G. § 1B1.10, cmt. n.1(A).

On October 18, 2012, Black filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2), which allows for a sentence reduction "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Black claimed that because the FSA had lowered the statutory minimum for the amount of crack cocaine for which he was accountable from 120 months' imprisonment to 60 months'

4

imprisonment and the Sentencing Commission had, as required by the FSA, reduced its recommended sentencing ranges for crack cocaine to the same extent, his sentence should be reduced accordingly.

The district court denied Black's motion, relying on our decision in Bullard to state that "[t]he Fourth Circuit, like most others, has held that the FSA mandatory minimums do not apply retroactively." The court therefore concluded that while "application of the retroactive FSA guidelines to this matter results in a new guideline range of fifty-one to sixty-three months . . . [the] defendant still faces a pre-FSA mandatory minimum of 120 months' imprisonment."

Black filed this appeal, arguing primarily that even though the Supreme Court's decision in Dorsey may not have directly overruled Bullard, it nonetheless provides the rationale for applying the FSA to his § 3582(c)(2) proceeding and thereby for modifying his 120-month sentence, which had been imposed in 2007 before the effective date of the Act.

II

Black contends that the Supreme Court's decision in Dorsey, while not holding that the FSA applies to a § 3582(c)(2) proceeding, implies such a result through its reasoning. He recognizes Dorsey's narrow holding that persons sentenced after

5

the effective date of the FSA for an offense committed before the effective date should be sentenced pursuant to the FSA. To apply that holding, he reasons that a § 3582(c)(2) proceeding is a sentencing proceeding, and therefore, because his § 3582(c)(2) proceeding took place <u>after</u> the FSA's effective date, he should be sentenced under the FSA, which establishes a reduced statutory minimum sentence of 60 months' imprisonment for the amount of drugs involved in his crime.

To reach this conclusion, he relies on the reasons the <u>Dorsey</u> Court gave for concluding that a defendant who commits a crime before the effective date of the FSA but was sentenced after the effective date should have the benefit of the FSA. He argues that just as <u>Dorsey</u>'s holding did no violence to the basic principles governing the retroactivity of legislation, a holding applying the FSA to § 3582(c)(2) proceedings would similarly do no such violence. This is because, he explains, a sentencing court generally applies the Sentencing Guidelines in effect <u>on the date of sentencing</u>, 18 U.S.C. § 3553(a)(4)(A)(ii), and the FSA was enacted against that statutory background. He contends that his construction is confirmed by the FSA's directive to the Sentencing Commission to conform its Guidelines to the FSA "as soon as practicable" and by the Sentencing Commission's response in promulgating reduced Guidelines ranges, to be applied retroactively. Moreover, he argues, as a policy

6

consideration, the Supreme Court in Dorsey recognized that the FSA was enacted to eliminate disparities and application of the FSA through § 3582(c)(2) would eliminate disparities. As he states:

> It follows from the reasoning of Dorsey that Congress intended that the Fair Sentencing Act's more lenient mandatory minimums also apply in § 3582(c)(2) proceedings based on the retroactive FSA guideline amendments.

While Black's logical development is neat, it overlooks and therefore fails to address legal realities. First, there is no language in the FSA explicitly providing or even suggesting that it be applied retroactively. Second, Dorsey resolved a tension between 1 U.S.C. § 109 and 18 U.S.C. § 3553(a)(4) with reasoning that would not apply to a sentence-modification proceeding under § 3582(c)(2). Third, without precedential support from Dorsey, Black is bound by our decision in Bullard, which held that the FSA is not retroactive. And fourth, a § 3582(c)(2) proceeding is not a sentencing proceeding as addressed in Dorsey, and, moreover, the language of § 3582(c)(2) itself limits its applicability to the situation where the defendant was sentenced based on a sentencing range that subsequently was reduced by the Sentencing Commission. We address the second, third, and fourth points in further detail.

7

A

In construing the FSA, the Dorsey Court was faced with the task of resolving the tension between the principles inherent in two statutes that seemed to pull in opposite directions. Section 109 of Title 1, which is a statute of general applicability, provides, as the Dorsey Court described it, that "a new criminal statute that repeals an older criminal statute shall not change the penalties incurred under that older statute unless the repealing Act shall so expressly provide." Dorsey, 132 S. Ct. at 2330 (internal quotation marks and alterations omitted). Section 3553(a)(4)(A)(ii) of Title 18, on the other hand, provides, again as the Dorsey Court described it, that "regardless of when the offender's conduct occurs, the applicable Guidelines are the ones in effect on the date the defendant is sentenced." Id. at 2331 (internal quotation marks omitted). The Court observed that the language of these statutes "argues in opposite directions." Id. at 2230. In resolving the tension, the Court concluded that Congress, in enacting the FSA, clearly understood and accepted the existing principles of § 3553(a), as it specifically instructed the Sentencing Commission to promulgate new Guidelines "as soon as practicable." Thus, the Court reasoned that Congress intended that the FSA apply to all those who had not yet been sentenced even though their crimes may have been committed before the Act.

8

Id. at 2331. Moreover, it observed that this conclusion eliminated an undesirable disparity, noting that two different defendants accountable for the same quantity of crack cocaine and sentenced on the same day after the effective date of the FSA -- one for a crime committed before the Act's effective date and one for a crime committed after -- should be subject to the same law at sentencing. Id. at 2333. In essence, the Court held that the FSA should be applied prospectively to all sentences imposed after the Act's effective date of August 3, 2010. Id. at 2335.

While the Court's interpretation of the FSA eliminated disparities among all defendants sentenced after the effective date, it recognized that its construction would leave in place disparities between defendants sentenced before the effective date of the FSA and defendants sentenced after. Dorsey, 132 S. Ct. at 2335. The Court reasoned that some disparity is inevitable when Congress changes the penalty for a crime. Id.

In this case, Black was sentenced in 2007, before the 2010 effective date of the FSA, and therefore cannot rely on Dorsey's reasoning. Any efforts by Black to broaden Dorsey's holding by arguing that the FSA applies generally to reduce the sentences of all persons having received statutory minimum sentences at any time before the effective date of the FSA are not supported

9

by any statute or case law. Indeed, our decision in Bullard precludes such efforts.

B

In Bullard, we held "that the FSA does not apply retroactively." Bullard, 645 F.3d at 249. The defendant there committed a crime before the effective date of the FSA and was also sentenced before the effective date, just as is the case here, and we limited our holding to those circumstances. Indeed, we specifically noted, "We do not address the issue of whether the FSA could be found to apply to defendants whose offenses were committed before August 3, 2010, but who have not yet been sentenced, as that question is not presented here." Id. at 248 n.5 (emphasis added). Likewise, the Dorsey Court expressly noted that it was not extending its relief to individuals sentenced before the FSA's effective date:

> We also recognize that application of the new minimums to pre-Act offenders sentenced after August 3 will create a new set of disparities. But those disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date). We have explained how in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced. [C]ompare 18 U.S.C. § 3553(a)(4)(A)(ii) with § 3582(c).

\*     \*     \*

10

> We consequently conclude that this particular new disparity (between those pre-Act offenders already sentenced and those not yet sentenced as of August 3) cannot make a critical difference.

Dorsey, 132 S. Ct at 2335 (citation omitted).

Since Dorsey was decided, we have twice concluded that it did not overrule our decision in Bullard. In United States v. Mouzone, 687 F.3d 207, 222 (4th Cir. 2012), we held, citing both Dorsey and Bullard, that the FSA "applies retroactively only to 'offenders whose crimes preceded August 3, 2010, but who are sentenced after that date.'" (Emphasis added). Likewise, in United States v. Allen, 716 F.3d 98, 107 (4th Cir. 2013), we stated that "our holding in Bullard -- that the Fair Sentencing Act does not have retroactive effect -- is limited [by Dorsey] to the extent that the Fair Sentencing Act does apply to all sentences handed down after its enactment."

C

Black attempts to distinguish our Bullard line of precedents by noting that those cases involved direct appeals of the defendants' initial sentences, whereas his case involves a motion under 18 U.S.C. § 3582(c)(2). He argues that his § 3582(c)(2) motion initiated a new sentencing proceeding to which the FSA would apply under Dorsey, because the "new" sentencing proceeding took place after the effective date of the FSA.

11

In making this argument, he acknowledges that his § 3582(c)(2) proceeding, which allows for limited modifications, was not a "plenary resentencing." But he argues:

> A sentence "modification" under § 3582(c) bears many of the hallmarks of an initial sentencing: the district court must calculate the advisory guideline range in light of the amended guideline provisions, it must consider the statutory sentencing factors set out at 18 U.S.C. § 3553(a), and it must exercise discretion to determine what sentence to impose in light of these factors. See U.S.S.G. § 1B1.10, § 3582(c)(2). Especially in cases where a defendant received a substantial assistance departure initially, the district court enjoys substantial latitude in the manner and means of calculating what reduction, if any, to grant the defendant.

This argument overlooks the fact that Black is serving a statutory minimum sentence that was imposed on him in 2007, before the 2010 effective date of the FSA, and that the reasoning of Dorsey, applying the FSA to sentences imposed after its effective date, referred to initial sentencings, as the Court alluded to the relationship between the criminal act and the sentence, not to subsequent proceedings to modify the sentence. See, e.g., Dorsey, 132 S. Ct. at 2331-32, (referring to the imposition of penalties for a crime when discussing the tension between 1 U.S.C. § 109 and 18 U.S.C. § 3553(a)(4)(A)(ii)); see also id. at 2335 (referring to the disparity left by its decision as "between those pre-Act offenders already sentenced and those not yet sentenced as of August 3" (emphasis added)). Black's § 3582(c)(2) motion is an

12

effort to modify a preexisting sentence, imposed in 2007, and Black fails to explain how his 2007 sentence could be changed without a retroactive application of the FSA.

Moreover, Black's ability to obtain modification under § 3582(c)(2) of an earlier entered sentence would have been available only if his 2007 sentence were "based on a sentencing range that ha[d] subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)."  18 U.S.C. § 3582(c)(2) (emphasis added).  That gate of opportunity was thus open only under conditions that Black did not satisfy -- his sentence was not based on "a sentencing range" that the Sentencing Commission subsequently lowered.  He was originally sentenced to a statutory minimum sentence fixed by Congress in 21 U.S.C. § 841(b)(1), and the Sentencing Commission did not change, nor purport to change, that statutory minimum sentence. Indeed, it had no authority to change any statutory minimum fixed by congressional enactment.

This is explicitly recognized by the Sentencing Commission's policy statement applicable to § 3582(c)(2) proceedings.  See 18 U.S.C. § 3582(c)(2) (providing that any reduction under § 3582(c)(2) must be "consistent with applicable policy statements issued by the Sentencing Commission"). U.S.S.G. § 1B1.10, the applicable policy statement, specifies that a defendant is not eligible for § 3582(c)(2) relief where

13

his Guideline range has not been lowered "because of the operation of another guideline or statutory provision (<u>e.g.</u>, <u>a statutory mandatory minimum term of imprisonment</u>)." U.S.S.G. § 1B1.10 cmt. n.1(A) (emphasis added). "Together, § 3582(c)(2) and the Policy Statement make clear that a defendant whose offense of conviction involved crack is eligible for a reduced sentence only if [the amendment] lowers the defendant's applicable guideline range." <u>United States v. Munn</u>, 595 F.3d 183, 187 (4th Cir. 2010).

The Sentencing Commission also made this point clear when issuing Guideline Amendment 759, which made the primary Guideline Amendment implementing the FSA (Amendment 750) retroactive. The Commission stated that "[t]he Fair Sentencing Act of 2010 did not contain a provision making the statutory changes retroactive. . . . [T]he inclusion of Amendment 750 (Parts A and C) in § 1B1.10(c) only allows the guideline changes to be considered for retroactive application; <u>it does not make any of the statutory changes in the Fair Sentencing Act of 2010 retroactive</u>." U.S.S.G. App. C Amend. 750 (2011) (emphasis added).

In this case, Black's 120-month sentence was the minimum required by statute at the time he was sentenced. Since the Sentencing Commission did not, nor could not, reduce this statutorily mandated minimum, Black was "ineligible for a

14

reduction under § 3582(c)(2)." Munn, 595 F.3d at 187; see also United States v. Hood, 556 F.3d 226, 235-36 (4th Cir. 2009).

## III

In sum, we conclude, as we did in Bullard, that the reduced statutory minimum sentences enacted in the FSA on August 3, 2010, do not apply retroactively to defendants who both committed crimes and were sentenced for those crimes before August 3, 2010. See Bullard, 645 F.3d at 249. We also conclude that a proceeding commenced by the filing of a motion under § 3582(c)(2) is not a sentencing proceeding to which the holding of Dorsey applies. See United States v. Blewett, __ F.3d __, No. 12-5226(L), 2013 WL 6231727, *8-10 (6th Cir. Dec. 3, 2013) (en banc) ("[A] mandatory minimum subsequently lowered by Congress is not, as § 3582(c)(2) requires, a 'sentencing range . . . subsequently . . . lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)'" (omissions in original)); United States v. Kelly, 716 F.3d 180, 182 (5th Cir. 2013) ("We thus join our sister circuits in declining to treat a § 3582(c)(2) modification hearing as the equivalent of an original sentencing hearing under Dorsey"); United States v. Hammond, 712 F.3d 333, 336 (6th Cir. 2013) (same); United States v. Augustine, 712 F.3d 1290, 1295 (9th Cir. 2013) (same); United States v. Berry, 701 F.3d 374, 377 (11th Cir. 2012) (same).

15

Finally, we conclude, as we stated in Munn, that a defendant who has been convicted of a crack cocaine offense and given a statutory minimum sentence is "ineligible for a reduction under § 3582(c)(2)."  Munn, 595 F.3d at 187; see also Hood, 556 F.3d at 235–36.

In reaching these conclusions, we recognize that a discrepancy remains between those sentenced to statutory minimum sentences under 21 U.S.C. § 841(b) before August 3, 2010, the effective date of the FSA, and those sentenced after.  But such a discrepancy, "reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences," Dorsey, 132 S. Ct. at 2335, and any unfairness resulting from such a discrepancy is "beyond the province of this court to resolve," Augustine, 712 F.3d at 1295.

Accordingly, the judgment of the district court is

AFFIRMED.

KING, Circuit Judge, concurring:

Bound by our decision in Bullard, I join in Judge Niemeyer's opinion for the Court. I write separately to express my regret that controlling precedent compels such an unfair result. Prior to the FSA, Congress's insistence on unduly harsh mandatory minimum sentences for nonviolent crack-cocaine offenders — even after such sentences were widely acknowledged to be racially discriminatory — was a grim misfire in the war on drugs. Remnants of the injustice thus occasioned will persist as the result of our opinion today.

Fortunately, the Supreme Court's decision in Dorsey does not foreclose the hope that Bullard could one day be abrogated. As Judge Niemeyer's opinion makes clear, Dorsey stopped short of deciding whether a defendant sentenced under the old regime may avail himself of an FSA-reduced mandatory minimum. The Dorsey decision therefore left open the possibility that the Court will confront that retroactivity issue in a subsequent case. The Court could yet be persuaded — as am I — by Black's contention that the reasoning underlying Dorsey applies with equal force to defendants such as him. Others have made known their similar views. See United States v. Blewett, ___ F.3d ___, No. 12-5226(L), 2013 WL 6231727, at *36-38 (6th Cir. Dec. 3, 2013) (en banc) (Rogers, J., dissenting).

Otherwise, I join the call for congressional and executive action following through on the noble promise of the FSA: to "restore fairness to Federal cocaine sentencing." <u>See</u> Pub. L. 111-220, 124 Stat. 2372, 2372. There is nothing fair about the ongoing plight of thousands of crack-cocaine offenders who yet languish in our prison system, serving sentences based largely on race-based misperceptions, rather than on the gravity of their criminal conduct.